SCOTT A. KAMBER (admitted pro hac vice)
skamber@kamberlaw.com
DAVID A. STAMPLEY (admitted pro hac vice)
dstampley@kamberlaw.com
KAMBERlaw, LLC
100 Wall street, 23rd Floor
New York, New York 10005
Telephone:   (212) 920-3072
Facsimile:    (212) 202-6364

Interim Class Counsel

DAVID C. PARISI (SBN 162248)
dcparisi@parisihavens.com
SUZANNE HAVENS BECKMAN (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:   (818) 990-1299
Facsimile:    (818) 501-7852

Additional counsel listed on signature page

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re QUANTCAST ADVERTISING COOKIE LITIGATION, and <br><br><br> In Re CLEARSPRING FLASH COOKIE LITIGATION | No. 2:10-cv-05484-GW-JCG <br><br> No. 2:10-cv-05948-GW-JCG <br><br> [Assigned to the Hon. George H. Wu] <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date:          December 16, 2010 <br> Location:    Courtroom 10 <br>                   312 N. Spring Street <br>                   Los Angeles, CA 90012 <br> Time:         8:30 a.m. |

# NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that the plaintiffs in the above-captioned matters ("Plaintiffs") will, pursuant to Federal Rule of Civil Procedure 23(e), move that the above-named Court grant preliminary approval of a proposed settlement (the "Settlement"), including a settlement agreement (the "Settlement Agreement") in these class action matters, before the Honorable George H. Wu on December 16, 2010 at 8:30 a.m. or at such other time as may be set by the Court..

Plaintiffs seek preliminary approval of this class action Settlement, certification of the proposed class for the purposes of the Settlement, provision of notice to the Settlement class, and appointment of Plaintiffs as class representatives and their counsel as class counsel. The Motion is based on this Notice of Motion, Plaintiffs' Brief in Support of the Motion and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing or at the request of the Court.

DATED: December 3, 2010            KAMBERLAW, LLC

s/Scott A. Kamber_____
Scott A. Kamber (pro hac vice)
skamber@kamberlaw.com
David A. Stampley (pro hac vice)
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:   (212) 920-3072
Facsimile:   (212) 920-3081
Interim Counsel for the Class

Avi Kreitenberg (SBN 266571)
akreitenberg@kamberlaw.com
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, California 90035

Telephone:   (310) 400-1050
Facsimile:    (310) 400-1056

Joseph H. Malley (not admitted)
malleylaw@gmail.com
Law Office of Joseph H. Malley
1045 North Zang Blvd Dallas, TX 75208
Telephone: (214) 943-6100

David Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:   (818) 990-1299

Majed Nachawati
mn@fnlawfirm.com
Fears Nachawati Law Firm
4925 Greenville Ave, Suite 715
Dallas, Texas 75206
Telephone: (214) 890-0711

Jeremy Wilson
Jeremy@wilsontrosclair.com
Kenneth P. Trosclair
pete@wilsontrosclair.com
Wilson Trosclair & Lovins, P.L.L.C.
302 N. Market St., Suite 510
Dallas, Texas 75202
Telephone: (214) 484-1930

# TABLE OF CONTENTS

**I.**   **NATURE OF THE LITIGATION**..................................................**6**

    A.   The Complaints at Issue ................................................. 6

    B.   Mediation and Settlement............................................... 7

    C.   Defendants' Position...................................................... 7

**II.**   **TERMS OF THE SETTLEMENT** .........................................**8**

    A.   Definitions ..................................................................... 8

    B.   General Relief .............................................................. 10

    C.   Additional Relief ......................................................... 10

    D.   Release ......................................................................... 14

**III.**   **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED** .........................................................................**14**

    A.   The Requirement of Numerosity Is Satisfied ............... 15

    B.   The Requirement of Commonality is Satisfied ............. 15

    C.   The Requirement of Typicality is Satisfied .................. 16

    D.   The Requirement of Adequate Representation is Satisfied .................................... 17

    E.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ............ 18

**IV.**   **THE COURT SHOULD APPOINT SCOTT A. KAMBER AND DAVID STAMPLEY OF KAMBERLAW AS CLASS COUNSEL** ............**19**

**V.**   **THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT** ..........................................**19**

**VI.**   **THE PROPOSED PLAN OF CLASS NOTICE** .......................**22**

**VII.**   **CONCLUSION** .........................................................**23**

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................ 14, 18

*Armstrong v. Bd. of Schl. Dirs. of City of Mil.*, 616 F.2d 305 (7th Cir. 1980) ........... 20

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ............................... 15

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007) ............................... 15, 16, 17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................... 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................... 20

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359 (N.D. Ohio 2001). ........ 21

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .................................. 20, 21

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................ 20

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................ 20

*Pierce v. County of Orange*, 519 F.3d 985 (9th Cir. 2008) ...................................... 18

<u>Other Authorities</u>

*DeLise v. Fahrenheit Entm't*, Civ. Action No. CV-014297 (Cal. Sup. Ct. Marin Cty.

　　Sept. 2001) .......................................................................................... 21

*In Re DoubleClick, Inc. Privacy Litigation*, No. 00 Civ. 0641 (NRB) (S.D.N.Y.

　　2001) .................................................................................................... 21

<u>Rules</u>

Federal Rule of Civil Procedure 23(a) ................................................................ 15

Federal Rule of Civil Procedure 23(a)(1) ............................................................ 15

Federal Rule of Civil Procedure 23(a)(2) ............................................................ 15

Federal Rule of Civil Procedure 23(a)(3) ....................................................... 16, 17

Federal Rule of Civil Procedure 23(a)(4) ............................................................ 17

Federal Rule of Civil Procedure 23(b)(3) ....................................................... 15, 18

Federal Rule of Civil Procedure 23(c)(2)(B) ....................................................... 22

Federal Rule of Civil Procedure 23(e) .................................................... 19, 21, 22

Federal Rule of Civil Procedure 23(e)(1) ............................................................ 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Federal Rule of Civil Procedure 23(g)(1)...................................................................19

<u>Treatises</u>

Alba & Conte, 4 *Newberg on Class Actions*, §11.25 (4th Ed. 2002) .......................20

Alba & Conte, 4 *Newberg on Class Actions*, §11.53 (4th Ed. 2002) .......................22

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) ...........................................14

*Manual for Complex Litigation* § 30.41 (3rd ed. 1995) ............................................20

## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

In this putative class action, Plaintiffs seek relief based on their allegations that Defendants Quantcast and Clearspring bypassed class members' browser privacy controls in order to track class members' Internet activities in a way that class members would not expect or detect. Plaintiffs allege that Adobe Flash local shared objects ("LSOs," sometimes referred to as "Flash cookies") were used to track their web activities without their knowledge or consent, that they did not receive adequate notice or choice about the use of LSOs, and that the Defendants' actions violated the Plaintiffs' privacy rights, implicating a number of state and federal statutes.

As explained more fully below, as a result of the proposed settlement, Defendants Quantcast and Clearspring have stated that they will stop the offending activities alleged by Plaintiffs, by not "respawning" deleted cookies or using Adobe Flash capabilities in certain undisclosed ways, including ways that would tend to circumvent users' browser controls on uses of browser cookies[1]. Other Defendants named in the actions, which provide web-based content to consumers, will take measures to implement and encourage the further development of industry standards restricting the complained of use of LSO's and encouraging the development of user tools to promote user awareness and control of certain types of online interactions and information collection.

Further, the Settlement provides for 2.4 million dollars in *cy pres* payments to one or more non-profit organizations identified by plaintiffs to fund research and education projects and activities to promote consumer awareness and choice regarding the privacy, safety, and security of electronic information from and about consumers.

---

[1]   In settling the case and agreeing to the injunctive relief, Defendants do not admit to the allegations of the Complaints and Quantcast and Clearspring deny that they presently use LSO's in the offending manner.

The two consolidated actions, each comprising three cases, that would be resolved by the proposed Settlement are: *In Re Quantcast Advertising Cookie Litigation*, Case No. 2:10-cv-05484-GW-JCG, and I*n Re Clearspring Flash Cookie Litigation*, Case No. 2:10-cv-05948-GW-JCG.  The two defendants named in the captions of the consolidated cases, Quantcast Corporation ("Quantcast") and Clearspring Technologies, Inc. ("Clearspring"), are online third-party service providers. They provide ad delivery and web traffic analysis services on consumer-facing websites, such as those of the other Defendants.

The other Defendants, American Broadcasting Companies, Inc., Demand Media, Inc., ESPN, Inc., Fox Entertainment Group, Inc., Hulu, LLC, JibJab Media, Inc., MTV Networks, a division of Viacom International Inc., MySpace, Inc., NBC Universal, Inc, Scribd, Inc., Soapnet, LLC, Walt Disney Internet Group, and Warner Bros. Records Inc. ("Defendants"); and certain Defendants' affiliated Undertaking Parties (as defined below and in the Settlement Agreement), are the owners or sponsors of consumer-facing websites whose websites were allegedly visited by the representative plaintiffs in the lawsuits. Some of these Defendants, along with the parent companies of other Defendants (are referred to as the "Undertaking Parties" in the Settlement Agreement. The Undertaking Parties have many customers, subsidiaries and affiliates in the United States, and the steps being taken in the settlement apply to all of them.

Quantcast and Clearspring provide services to many websites, including some of those owned or sponsored by the Undertaking Parties. Quantcast and Clearspring's services include displaying targeted advertisements to website visitors, analyzing website traffic, and providing technology that other companies can use to interact with consumers browsing the web. For consumers visiting a website, Quantcast and Clearspring are considered "third parties" that provide services to the websites. Many of the websites are supported by advertising and many of them

monitor visitor activity to assess the popularity of their web pages. Because Quantcast and Clearspring provide advertising and measurement services to those websites, consumers who visit those websites are brought into direct contact with Quantcast and Clearspring, even though the consumers may not be aware of it.

Like many other online, third-party service providers, Quantcast and Clearspring store and read browser cookies on the computers of website visitors, as part of the process of serving advertisements and collecting information for web analytics. Users who do not want third parties' cookies can set their browser controls to block third-party cookies. Users can also delete previously stored, third-party cookies.

In addition to using browser cookies, Quantcast and Clearspring, like some other third-party service providers, used Adobe Flash local shared objects ("LSOs," which have also been called "Flash Cookies") in their interactions with website visitors. Adobe Corporation has stated that LSOs were designed to support consumers' ability to experience "rich Internet application" content using the Adobe Flash Player. Plaintiffs allege that Quantcast and Clearspring stored LSOs on users' computers to collect information from and about users—even users who had set their browser privacy settings to block third-party cookies. Plaintiffs also allege that, in some cases, if users had deleted third-party cookies, the use of LSOs resulted in the recreation (sometimes referred to as "respawning") of the deleted cookies. Quantcast and Clearspring do not concede that Plaintiffs' factual contentions are accurate.

The class action complaints filed by the Plaintiffs alleged the Defendants used LSOs to circumvent users' blocking or deleting Quantcast and Clearspring browser cookies. The Plaintiffs claimed they did not receive adequate notice or choice about the use of LSOs and that the Defendants' actions violated the Plaintiffs' privacy rights. The complaints, taken together, alleged the Defendants' practices violated the following federal statutes, California statutes, and common-law legal rights: the

Computer Fraud and Abuse Act, Title 18, United States Code 1030; the Electronic Communications Privacy Act, Title 18, United States Code, Section 2510; the Video Privacy Protection Act, Title 18, United States Code, Section 2710; the Computer Crime Law, California Penal Code, Section 502; the Invasion of Privacy Act, California Penal Code, Section 630; the Unfair Competition Law, California Business and Professions, Section 17200; the Consumer Legal Remedies Act, California Civil Code, Section 1750; the California Uniform Trade Secrets Act, California Civil Code, Section 3426; Trespass to Personal Property/Chattels; and Unjust Enrichment.

Representatives of the parties met and engaged in substantial private settlement mediation discussions before Mr. Rodney Max on October 19, 2010. This effort enabled the parties to reach an agreement in principle in connection with these mediations and through extensive, ongoing negotiations between the principal lawyers for the Class (Mr. Kamber), Clearspring (Mr. Rhodes), Quantcast (Mr. Page), Warner Bros. Records Inc. and Warner Music Inc. (Mr. Kahn), Demand Media, Inc. (Mr. Ballon), and American Broadcasting Companies, Inc., ESPN, Inc., Fox Entertainment Group, Inc., MTV Networks, MySpace, Inc., Walt Disney Internet Group, Soapnet, LLC and Defendants/Undertaking Parties Hulu, LLC, JibJab Media, Inc., NBC Universal, Inc. and Scribd, Inc. (Mr. Jacobson). A true copy of the stipulated Settlement Agreement (the "Settlement Agreement") is attached hereto as Exhibit A.

Under the Settlement Agreement, Quantcast and Clearspring represent that they will not "employ LSOs to: (i) "respawn" HTTP cookies; and/or (ii) serve as an alternative method to HTTP cookies for storing information about a user's web browsing history, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content, without adequate disclosure; and/or (iii) otherwise counteract any computer user's decision to either prevent the use of or to delete previously created HTTP cookies."  (Settlement Agreement, sec. 4.19.)  Further, the Undertaking Parties, *inter alia*, agree to "send a request to at

least one of the industry groups charged with receiving comments to the Self-Regulatory Principles that those Self-Regulatory Principles should be amended to include express prohibitions on the use of LSOs or any similar technology to regenerate, without disclosure, HTTP cookies that a user affirmatively deleted," and each Undertaking Parties shall "(i) in its online Privacy Policy or an opt-out page clearly linked thereto: maintain a link to the Network Advertising Initiative "Opt Out of Behavioral Advertising" tool, presently located at http://www.network¬advertising.org/manag¬ing/opt_out.asp or, once it is fully implement¬ed for consumers, to the industry-developed website page currently represented by http://www.about-ads.info/consumers/; or, on the Undertaking Party's own internet home page, maintain a link to a page with substantially the same informa¬tion and consumer options; or (ii) once it is fully implemented for consumers, display the "Advertising Option Icon" discussed in the Self-Regulatory Principles, which links to an OBA disclosure statement and opt-out mechanism."  (Settlement Agreement, secs. 4.20.1 and 4.20.3.)

Given the challenges and uncertainties facing Plaintiffs if they were to litigate this matter, the results achieved through the settlement are well beyond those required to satisfy preliminary approval standards. Accordingly, Plaintiffs move the Court to preliminarily approve the instant settlement; certify the settlement class; appoint Jennifer Aguirre; A.A., a minor, by and through her parent Guardian Ad Litem, Jose  Aguirre; Alan Bonebrake; Alejandro Godoy; Byron Griffith; J.H., a minor, by and through his parent, Guardian Ad Litem, Jeff Hall; R.H., a minor by and through her parent Guardian Ad Litem, Jeff Hall; Mary Huebner; Erica Intzekostas; Jose Marquez; Kira Miles; Toni Miles; Terrie J.  Moore; Austin Muhs; David Rona; Brittany Sanchez; Edward Valdez; Gerardo Valdez ; Kayla Valdez, and Brian White as class representatives; and Scott A. Kamber and David A. Stampley of Kamber-Law, LLC as class counsel.

## I.      NATURE OF THE LITIGATION
### A.      The Complaints at Issue

**Quantcast Corporation:**  On July 23, 2010 and July 30, 2010, the *Valdez, et al. v. Quantcast Corporation, et al*. and *Aguirre v. Quantcast Corporation, et al.* complaints were filed against Quantcast (and other defendants). Collectively, these Complaints alleged violations of (i) the Computer Fraud and Abuse Act, 18 U.S.C. 1030; (ii) the Electronic Communications Privacy Act, 18 U.S.C. § 2510; (iii) the Video Privacy Protection Act, 18 U.S.C. § 2710; (iv) California's Computer Crime Law, Penal Code § 502; (v) California's Invasion of Privacy Act, California Penal Code § 630; (vi) the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200; (vii) the California Consumer Legal Remedies Act; (viii) Unjust Enrichment; and (ix) California Uniform Trade Secrets Act, California Civil Code § 3426. On September 21, 2010, the *Valdez, et al. v. Quantcast Corporation, et al.* and *Aguirre v. Quantcast Corporation, et al.* actions were consolidated by order of the court in the Central District of California as *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW-JCG. The Complaint in *Godoy v. Quantcast Corporation*, filed October 13, 2010, was determined by the Court to be related to the foregoing matters.

**Clearspring Technologies, Inc.:**   The Complaints in *White, et al. v. Clearspring Technologies, Inc., et al., Intzekostas v. Fox Entertainment Group, Inc., et al.*, and *Rona v. Clearspring Technologies, Inc.* were filed respectively on August 10, 2010, September 10, 2010, and October 18, 2010 alleging claims against Clearspring (and other defendants). Collectively these Complaints alleged violations of (i) the Computer Fraud and Abuse Act, 18 U.S.C. 1030; (ii) California's Computer Crime Law, Penal Code § 502; (iii) California's Invasion of Privacy Act, California Penal Code § 630; (iv) the California Consumer Legal Remedies Act, California Civil Code § 1750; (v) the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200; (vi) Trespass to Personal Property/Chattels; (vii) Unjust Enrichment;

and (viii) the Electronic Communications Privacy Act, 18 U.S.C. § 2510. On October 13, 2010, the *White, et al. v. Clearspring Technologies, Inc., et al.* and *Intzekostas v. Fox Entertainment Group, Inc., et al.* actions were consolidated by order of the court in the Central District of California as *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW-JCG.

Concurrent with the filing of this Motion for Prelminiary Approval, Plaintiffs are filing consolidated and amended complaints in *In re Clearspring Flash Cookie Litig.* and *In re Quantcast Advertising Cookie Litig.*  The amended complaint does not include all of the allegations Plaintiffs leveled in the *White* complaint.

**B.    Mediation and Settlement**

Commencing in October 2010, representatives of Plaintiffs and Defendants initiated settlement negotiations that included, among other things, in-person mediation conducted by the Mediator on October 19, 2010, during which the participants candidly aired the strengths and weaknesses in their respective litigation positions. (Stampley Decl., ¶ 6.)

The October 19, 2010 mediation resulted in a tentative accord on an agreement in principal for the resolution of all claims alleged against Defendants in the Litigation, subject to additional negotiations and the Parties' thereafter reaching agreement on final settlement documentation, including this Settlement Agreement. The product at the end of the mediation session was a memorialized agreement on all substantive relief. (Stampley Decl. ¶ 6.) The parties did not discuss the amount of any incentive fee or payment to class counsel until after reaching agreement on the other terms of settlement. (Stampley Decl. ¶ 6b.)  The parties now seek preliminary approval of this long-negotiated settlement.

**C.    Defendants' Position**

At all times, all Defendants have denied and continue to deny any wrongdoing whatsoever or that they, or any of them, committed or have threatened or at-

tempted to commit, any wrongful acts or violations of law or duty, including, but not limited to, those alleged in the Complaint. (Stampley Decl. ¶ 5.) Defendants contend that they have acted properly and therefore deny that the plaintiffs and putative class are entitled to any form of damages based on the conduct alleged in the Complaint. (Stampley Decl. ¶ 5.) In addition, Defendants have maintained and continue to maintain that they have meritorious defenses to all claims alleged in the Complaint and that Defendants were and are prepared to vigorously defend against all claims asserted in this litigation. (Stampley Decl. ¶ 5.)

## II.       TERMS OF THE SETTLEMENT

The key terms of the settlement are detailed below.

### A.       Definitions

1.       Section 1.1 of the Settlement Agreement defines "Class" as:

All persons in the United States who, during the Class Period, used any web browsing program on any device to access one or more web sites or online content controlled, operated, or sponsored by Defendants or the Undertaking Parties, or any other website employing any of Clearspring's or Quantcast's technologies involving the use of HTTP cookies ("Cookies") or local shared objects stored in Adobe Flash Player local storage ("LSOs").Section 1.10 of the Settlement Agreement defines "Facebook" as "defendant Facebook, Inc. and its successors, representatives, and assignees."

2.       Section 1.19 of the Settlement Agreement defines "Preliminary Approval Date" as "the date entered by the Court on the Preliminary Approval and Notice Order."

3.       Section 1.21 of the Settlement Agreement defines "Protected Persons" as:

Defendants and the Undertaking Parties, and each of their respective past and present officers, directors, employees, insurers, agents, representatives, investors, customers, partners, joint-venturers, parents, subsidiaries (defined as any entity in which a Defendant or Undertaking Party owns or controls, directly or indirectly, at least 50% of the voting securities or the right to elect a majority of the members of the board of directors, or by contract or otherwise controls such entity, or has the right to direct the management of such entity), affiliates, attorneys, successors and assigns; as well as all Persons that used, deployed or caused

the deployment of, in online interactions with Class Members, Clearspring's Launchpad and/or Add This products; and all Persons in connection with whom defendants Quantcast, Clearspring, or an Undertaking Party deposited a Cookie or an LSO on a computer or device owned, controlled, or used by a Class Member.

4.   Section 1.27 of the Settlement Agreement defines "Undertaking Parties" as:

Defendants Demand Media, Inc.; Hulu, LLC; JibJab Media, Inc.; NBC Universal, Inc.; and Scribd, Inc.; News Corporation, an affiliate and the ultimate parent of Defendants Fox Entertainment Group, Inc. and MySpace, Inc.; Viacom Inc., of which Defendant MTV Networks is a division of a subsidiary, Viacom International Inc.; and The Walt Disney Company, of which Defendants American Broadcasting Companies, Inc., ESPN, Inc., Soapnet, LLC and Walt Disney Internet Group are subsidiaries, and Warner Music Inc., of which Warner Brothers Records Inc. is an affiliate.

5.   Section 1.22 of the Settlement Agreement defines "Released Claims" as:

Any and all claims for payment, non-economic or injunctive relief of any kind or nature and any and all liabilities, demands, obligations, losses, actions, causes of action, damages, costs, expenses, attorneys' fees and any and all other claims of any nature whatsoever, based on any of the laws, regulations, statutes or rules cited, evidenced or referenced by such allegations and statements, or any other claims, including but not limited to: all claims, including unknown claims, as set forth in Section 5.3 below, arising from or relating to (i) any of the allegations, facts or statements set out in, or to any claim that was or could have been brought in any of the Complaints; (ii) Defendants', the Undertaking Parties' and their subsidiaries' and affiliates' use of LSOs; alleged depositing of Cookies or LSOs on the computers of persons who accessed one or more of Defendants', the Undertaking Parties' or their subsidiaries' or affiliates' websites or other online content (in the case of the Undertaking Parties, their subsidiaries and affiliates, whether such Cookies or LSOs were deposited by or through an Undertaking Party, a subsidiary or affiliate thereof, Quantcast, Clearspring or any other Person); the regeneration or redeposit of Cookies after a user deleted those Cookies; or the alleged obtaining or provision of information from or about a user contrary to either the user's consent or intent; and (iii) claims that Defendants, the Undertaking Parties or their subsidiaries or affiliates allegedly tracked users, shared their information or displayed advertising to them without sufficient notice. Without limiting the foregoing, for avoidance of doubt, the definition of Released Claims is intended to provide any Protected Person that is an Undertaking Party or a subsidiary or af-

filiate thereof with a full release from all claims Class Counsel presently is pursuing involving LSOs and similar technologies in other cases, specifically: *Davis v. VideoEgg, Inc.*, No. CV 10 7112 (C.D. Cal.); *La Court v. Specific Media, Inc.*, No. 10-CV-1256 JVS (C.D. Cal.); *Aughenbaugh v. Ringleader Digital, Inc.*, No. 10-CV-1407-CJC-RNB (C.D. Cal.); and *Hillman v. Ringleader Digital, Inc.*, No. 10-CV-8315 (S.D.N.Y.); and such other similar case(s) as to which the Parties may agree in writing from time to time prior to the date approved by the Court for persons to object to or exclude themselves from the Settlement, which agreement shall not be unreasonably withheld by any Party and which writing(s) shall be deemed as amending and incorporated into this section 1.22. Notwithstanding the foregoing, excluded from Released Claims are all claims related to the use or deployment of non-Quantcast and non-Clearspring LSOs by any Person other than the Defendants or the Undertaking Parties.

## B.   General Relief

Defendants Quantcast and Clearspring will establish a cash settlement fund of two million, four hundred thousand dollars ($2,400,000), the net value of which which will be distributed to one or more non-profit organizations to fund research and education projects and activities to promote consumer awareness and choice regarding the privacy, safety, and security of electronic information from and about consumers, and which projects and activities shall exclude the sponsorship or funding of litigation or lobbying efforts regarding specific legislation. Individual class members will not receive direct compensation. Out of the $2.4 million fund, all attorneys' fees, costs, any enhanced awards to the named Plaintiffs, settlement administration costs, and notice and administration costs will be paid as provided for under the Settlement Agreement and described below.

## C.   Additional Relief

In addition to the payments and credits discussed above, the defendants will provide the following relief.

> 1.   Quantcast and Clearspring will not employ LSOs to: (i) "respawn" HTTP cookies; and/or (ii) serve as an alternative method to HTTP cookies for storing information about a user's web browsing history, unrelated to the delivery of content through the

Flash Player or the performance of the Flash Player in delivering such content, without adequate disclosure; and/or (iii) otherwise counteract any computer user's decision to either prevent the use of or to delete previously created HTTP cookies.   (Settlement Agreement, sec. 4.19.)

2.   Within thirty (30) days of entry of the Preliminary Approval and Notice Orders, the Undertaking Parties shall send a request to at least one of the industry groups charged with receiving comments to the Self-Regulatory Principles that those Self-Regulatory Principles should be amended to include express prohibitions on the use of LSOs or any similar technology to regenerate, without disclosure, HTTP cookies that a user affirmatively deleted. Additionally, the Undertaking Parties shall request that the Self-Regulatory Principles be amended to include guidance to member firms that LSOs should not be used without disclosure as an alternative method to HTTP cookies for storing information about a user's web browsing history across unaffiliated domains, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content. If an Undertaking Party is a member of the Network Advertising Initiative, the Undertaking Party also shall inform the Network Advertising Initiative of its preference that the NAI Principles be similarly amended.   (Settlement Agreement, sec. 4.20.1.)

3.   The Undertaking Party agree that they shall not, in an official capacity in any public or industry forum, take a position contrary to those stated above.  (Settlement Agreement, sec. 4.20.2.)

4. Each Undertaking Party shall, (i) in its online Privacy Policy or an opt-out page clearly linked thereto: maintain a link to the Network Advertising Initiative "Opt Out of Behavioral Advertis-ing" tool, presently located at http://www.network¬advertising.org/manag-ing/opt_out.asp or, once it is fully implement¬ed for consumers, to the industry-developed website page currently represented by http://www.about¬ads.info/consumers/; or, on the Undertaking Party's own internet home page, maintain a link to a page with substantially the same informa¬tion and consumer options; or (ii) once it is fully implemented for consumers, display the "Adver-tising Option Icon" discussed in the Self-Regulatory Principles, which links to an OBA disclosure statement and opt-out mecha-nism. A link to the Undertaking Party's online Privacy Policy or the Advertising Option Icon shall be displayed on the home page of each Undertaking Party's U.S. consumer-oriented website(s) and on at least a significant number of those consumer-oriented web pages of the Undertaking Party's U.S. consumer-oriented website(s) on which consumer data is collected or used for ad-vertising. (Settlement Agreement, sec. 4.20.3.)

5. If, after the Settlement becomes Final, an Undertaking Party or its agents deposit LSOs on the computers of users who visit one or more of its U.S. consumer-oriented websites or interact with its widgets or other applications on such websites, the Undertak-ing Party shall include, in its online Privacy Policy, a disclosure of its use of LSOs and a link to at least one website or utility of-fering users the ability to manage LSOs, if such website or utility

is available. By linking to such a third-party website or utility in order to comply with this Agreement, the Undertaking Party will not assume responsibility for the functionality or any other aspect of such website or utility. If one or more of the Undertaking Party's websites, widgets, or application components may not maintain its or their full user functionality unless the user's settings permit full acceptance of LSOs, the Undertaking Party shall so disclose in its Privacy Policy. (Settlement Agreement, sec. 4.20.4.)

6.   An Undertaking Party's Privacy Policy, links to which shall appear as specified above, shall include an email address or other online reporting mechanism to which members of the public can send any privacy-related concerns respecting the operation of the Undertaking Party's websites. The Undertaking Party will regularly review messages sent to this address or mechanism, but need not individually review duplicative or cumulative messages appearing to have emanated from or at the behest of the same source. (Settlement Agreement, sec. 4.20.5.)

7.   These provisions shall remain in effect until June 30, 2010. (Settlement Agreement, sec. 4.20.6.)

8.   Payment of Notice and Administrative Fees: The full cost of notice and administration and effectuation of the Settlement Agreement shall be paid out of the settlement fund.

9.   Compensation of Class Representatives: In addition to any benefits afforded under the settlement, and in recognition of their efforts on behalf of the class, subject to Court approval, representative Plaintiffs shall each receive $1,500 as appropriate compensa-

tion for their time and effort serving as the class representatives in the litigation against Defendants.

10.    Payment of Attorneys' Fees and Expenses: Defendants have agreed that a payment out of the Settlement Fund to Class Counsel, subject to Court approval, of up to twenty five percent of the settlement fund in attorneys' fees and for the reimbursement of Class Counsel's costs is fair and reasonable, and Defendants will not object to or otherwise challenge Class Counsels' application for payment of fees from the Settlement Fund if limited to such an amount. Proposed Class Counsel has, in turn, agreed not to seek more than said amount from the Court.

**D.    Release**

Upon the entry of a final order approving this settlement and following the expiration of the time for appeal or the entry of a decision on such appeal, class representatives and each and every member of the settlement class who have not timely filed a request to be excluded from the settlement class will release and forever discharge Quantcast, Clearspring, any of their customers which deployed the technology at issue in this case, as well as the other Defendants, the Undertaking Parties and their subsidiaries and affiliates,for their deployment of Quantcast and Clearspring technologies in any of their online content, as well as their deployment of similar technologies not provided by Quantcast or Clearspring in any of their online content, as further explained for in the attached Settlement Agreement.

**III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

Prior to granting preliminary approval of a settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court may certify a class when the plaintiffs demonstrate that the proposed class and proposed class representatives meet the

following prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)–(4). After meeting the strictures of Rule 23(a), the plaintiffs must then demonstrate that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a class, courts do not inquire into the merits of the plaintiffs' claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). As such, a court accepts the allegations of the plaintiffs' complaint as true, but may consider matters beyond the pleadings to determine if the claims are suitable for resolution on a class-wide basis. *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007).

### A.     The Requirement of Numerosity Is Satisfied

The numerosity prerequisite is met when "the class is so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, nor are plaintiffs required to state the exact number of potential class members. *Celano*, 242 F.R.D. at 548. Generally, the numerosity requirement is satisfied when the class comprises 40 or more members. *See id.*, 242 F.R.D. at 549. In this case, based on Quantcast's and Clearspring's representations embodied in the Settlement Agreement notice provisions and in the class notices themselves, the class is estimated to include most Internet users in the United States, easily enough to satisfy the numerosity requirement.

### B.     The Requirement of Commonality is Satisfied

The second threshold to certification requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "[P]laintiffs may demonstrate commonality by showing that class members have shared legal issues by divergent facts or that they share a common core of facts but base their claims for relief on different legal theories." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007).

"[O]ne significant issue common to the class may be sufficient to warrant certification." *Id.* As alleged in this case, all class members share the common issue of having had LSOs downloaded onto their computers, in Plaintiffs' view without disclosure or consent.  .

These common issues among class members results in common factual and legal questions such as:  (1) whether Defendants, without authorization, created and/or manipulated Adobe Flash Player local stored objects on computers to which Class Members' enjoyed rights of possession superior to those of Defendants; (2) for what purposes Defendants created and/or manipulated Adobe Flash Player local stored objects on Class Members' computers; (3) whether Defendants violated (i) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (ii) the California Uniform Trade Secrets Act, Civil Code § 3426; (iii) the California Computer Crime Law, Penal Code § 502; (iv) the California Unfair Competition Law, Business and Professions Code § 17200; (v) the California Consumer Legal Remedies Act, Civil Code § 1750; (4) whether Defendants misappropriated valuable information assets of Class Members; (5) whether Defendants continue to retain valuable information assets from and about Class Members; (6) what uses of such information were exercised and continue to be exercised by Defendants; and (7) whether Defendants have been unjustly enriched.

In addition, such common questions for the settlement include whether the settlement is fair, and what is the proper form of notice. Accordingly, the commonality requirement is satisfied.

**C.   The Requirement of Typicality is Satisfied**

Rule 23 next requires that a plaintiff's claims be typical of those of the class. Fed. R. Civ. P. 23(a)(3). "[T]ypicality focuses on the relationship of facts and issues between the class and its representatives." *Dukes*, 509 F.3d at 1184 fn.12 (citation omitted) ("[u]nder the rule's permissive standards, representative claims are 'typical'

if they are reasonably coextensive with those of absent class members; they need not be substantially identical[;] some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality"). Here, Defendants' alleged practice of using LSOs to circumvent users' blocking or deleting of Quantcast and Clearspring browser cookies and failure to provide adequate notice or choice about the use of LSOs is alleged to have resulted in Plaintiffs and the proposed settlement class having their privacy rights violated in breach of the state and federal law. It is alleged that Plaintiffs and each proposed class member were all subjected to Defendants' identical wrongful conduct in a nearly identical manner. As such, Plaintiffs' claims are typical of those of the proposed class and Fed. R. Civ. P. 23(a)(3) is met.

### D.    The Requirement of Adequate Representation is Satisfied

The final Rule 23(a) prerequisite requires that the proposed class representatives have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes*, 509 F.3d at 1185.

In this case, Plaintiffs have the same interests as the proposed class members—all have allegedly been wrongfully harmed by Defendants' alleged use of tracking devices. Therefore, Plaintiffs have no interests antagonistic to the interests of the proposed class. Further, class counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class action lawsuits that are similar in size, scope and complexity to the present case. (*See* Firm Resume of KamberLaw, LLC, a copy of which is attached hereto as *Exhibit B*.) Accordingly, both Plaintiffs and their counsel have and will adequately represent the class.

1    **E.    The Proposed Settlement Class Meets the Requirements of Rule**

2    **23(b)(3)**

3    Once the subsection (a) prerequisites are satisfied, Federal Rule of Civil Pro-

4    cedure 23(b)(3) provides that a class action can be maintained where the questions

5    of law and fact common to members of the class predominate over any questions af-

6    fecting only individuals, and the class action mechanism is superior to the other

7    available methods for the fair and efficient adjudication of the controversy. Fed. R.

8    Civ. P 23(b)(3); *Pierce v. County of Orange*, 519 F.3d 985, 991 n.5 (9th Cir. 2008).

9    In this case and in the context of the proposed settlement, common issues of fact and

10   law predominate.  Defendants' alleged practice of using LSO's to circumvent users'

11   blocking or deleting of Quantcast and Clearspring browser cookies and failure to

12   provide adequate notice or choice about the use of LSOs is alleged to have resulted

13   in Plaintiffs and the proposed settlement class having their privacy rights violated in

14   breach of the state and federal law and is common to the class members' claims and

15   their damages and predominates over any issues applicable to any individual mem-

16   bers of the class.

17   In addition, the instant class action is superior to any other method available

18   to fairly, adequately, and efficiently resolve the class members' claims. Absent a

19   class action, most members of the class would find the cost of litigating their claims

20   to be prohibitive, and such multiple individual actions would be judicially ineffi-

21   cient. Also, because the action, with the Court's permission, will now settle, the

22   Court need not consider issues of manageability relating to trial. *See Amchem*, 521

23   U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class

24   certification, a district court need not inquire whether the case, if tried, would pre-

25   sent intractable management problems, for the proposal is that there be no trial").

26   Accordingly, common questions predominate and a class action is the superior

27   method of adjudicating this controversy.

28

c

**IV.     THE COURT SHOULD APPOINT SCOTT A. KAMBER AND DAVID
STAMPLEY OF KAMBERLAW AS CLASS COUNSEL**

Under Rule 23, "a court that certifies a class must appoint class counsel . . .
[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P.
23(g)(1)(B). In making this determination, the Court must consider counsel's: (1)
work in identifying or investigating potential claims; (2) experience in handling
class actions or other complex litigation, and the types of claims asserted in the case;
(3) knowledge of the applicable law; and (4) resources committed to representing
the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

As discussed above, proposed class counsel have extensive experience in
prosecuting class actions and other complex litigation. (Stampley Decl. ¶ 9; s*ee also
Exhibit B*.) Further, proposed class counsel have diligently investigated and prose-
cuted this matter, dedicating substantial resources to the investigation of the claims
at issue in the action, and have successfully negotiated the settlement of this matter
to the benefit of the class. (Stampley Decl. ¶ 3.) Counsel and class representatives,
assisted by non-legal experts, spent over many months considering legal theories as
well as investigating factual and technology-related issues regarding Defendants'
use of LSO's to circumvent users' blocking or deleting of Quantcast and Clearspring
browser cookies  and their related lack of adequate notice or choice about the use of
LSO's. (Stampley Decl. ¶ 3-4.) Accordingly, the Court should appoint Plaintiffs'
counsel to serve as class counsel for the proposed class pursuant to Rule 23(g) and
Scott A. Kamber and David Stampley of KamberLaw, LLC as class counsel.

**V.     THE COURT SHOULD PRELIMINARILY APPROVE THE
PROPOSED SETTLEMENT**

After certifying the settlement class, the Court should preliminarily approve
the settlement. The procedure for review of a proposed class action settlement is a
well-established two-step process. Fed. R. Civ. P. 23(e); *see also* Alba & Conte, 4

*Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (quoting *Manual for Complex Litigation* § 30.41 (3rd ed. 1995)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *In re Syncor ERISA Litig.*, 516 F.3d at 1110. Notice of a settlement should be sent where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The *Manual for Complex Litigation* characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39. The standard of scrutiny for preliminary approval is more relaxed than for final approval. *Armstrong v. Bd. of Schl. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a settlement is

negotiated at arms' length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

In this case, there is no question that the proposed settlement is at least "within the range of possible approval." Only after extended arms-length negotiations, conducted under the supervision of Mr. Rodney Max, were the parties able to reach an agreement as to relief for the class. (Stampley Decl. ¶ 6.) Under that agreement, class members will benefit from Defendants' agreement not to employ LSOs as alleged in the Complaints and to provide proper notice about the use of browser cookies. The settlement's formulation for allocating settlement resources, which does not include compensation to members of the at-large class, is consistent with other settlements resolving claims that a defendant's insufficient online notice and choice resulted in violation of class members' privacy. *See, e.g., In Re DoubleClick, Inc. Privacy Litigation*, No. 00 Civ. 0641 (NRB) (S.D.N.Y. 2001) (DoubleClick, an Internet ad-serving company, revised its notice, choice, and data collection practices and conducted a privacy-oriented public information campaign by distributing 300 million Internet banner ads); *DeLise v. Fahrenheit Entm't*, Civ. Action No. CV-014297 (Cal. Sup. Ct. Marin Cty. Sept. 2001) (sellers of interactive music CD updated privacy policies, added warning labels to CDs, and purged previously collected data).

A comparison of the potential costs and benefits of consummating the Settlement Agreement versus continuing to prosecute this matter requires consideration of a number of factors. These factors include the strengths of the Plaintiffs' claims and ability to prevail at trial—in which class counsel remain confident—and the relief Plaintiffs anticipate from a successful trial outcome. Countervailing considerations

1   include the legal and factual burdens Plaintiffs would bear in bringing the matter to

2   trial, the defenses Defendants would assert—in which Defendants have expressed

3   continued confidence (Stampley Decl. ¶ 5), the complexities of class action practice,

4   and the risks that inevitably attend litigation, including the risk that Plaintiffs will

5   not ultimately prevail and so will not secure any post-trial relief. Even if successful

6   in prosecuting this matter, Plaintiffs would have forfeited the valuable, additional re-

7   lief now being offered at Defendants' discretion, and which could not be compelled

8   from Defendants following trial.

9        In advocating for approval of the Settlement Agreement, class counsel are

10  aided by their collective experience and awareness of the costs and risks described

11  above and are mindful of the interests of Plaintiffs and the putative class, particular-

12  ly given the proposed settlement's substantial and prompt relief and meaningful

13  long-term benefits. It is apparent that the proposed settlement serves the best inter-

14  ests of class members. Accordingly, this settlement easily falls well "within the

15  range of possible approval" and merits the Court's preliminary approval.

16  **VI.    THE PROPOSED PLAN OF CLASS NOTICE**

17       Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3),

18  the court must direct to class members the best notice practicable under the circum-

19  stances, including individual notice to all members who can be identified through

20  reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) similarly says, "The

21  court must direct notice in a reasonable manner to all class members who would be

22  bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ.

23  P. 23(e)(1). Notice is "adequate if it may be understood by the average class mem-

24  ber." *Newberg on Class Actions*, §11.53, at 167 (4th Ed. 2002).

25       The proposed settlement includes the parties agreement on providing notice

26  through publication as well as a dedicated website.  (Settlement Agreement, secs.

27

28

4.1-4.3.)  A notice plan will be submitted to the Court prior to the hearing on this Motion.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant preliminary approval of the proposed Settlement Agreement and enter the proposed order separately submitted herewith (a copy of which is *Exhibit A.1* to the Settlement Agreement), and grant such further relief the Court deems reasonable and just.


DATED: December 3, 2010                    KAMBERLAW, LLC

                                           s/Scott A. Kamber_____
                                           Scott A. Kamber (pro hac vice)
                                           Scott A. Kamber (pro hac vice)
                                           skamber@kamberlaw.com
                                           David A. Stampley (pro hac vice)
                                           dstampley@kamberlaw.com
                                           KamberLaw, LLC
                                           100 Wall Street, 23rd Floor
                                           New York, New York 10005
                                           Telephone:   (212) 920-3072
                                           Facsimile:    (212) 920-3081
                                           Interim Counsel for the Class

Avi Kreitenberg (SBN 266571)
akreitenberg@kamberlaw.com
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, California 90035
Telephone:   (310) 400-1050
Facsimile:    (310) 400-1056

Joseph H. Malley (not admitted)
malleylaw@gmail.com
Law Office of Joseph H. Malley
1045 North Zang Blvd Dallas, TX 75208
Telephone: (214) 943-6100

David Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:   (818) 990-1299

Majed Nachawati
mn@fnlawfirm.com
Fears Nachawati Law Firm
4925 Greenville Ave, Suite 715
Dallas, Texas 75206
Telephone: (214) 890-0711

Jeremy Wilson
Jeremy@wilsontrosclair.com
Kenneth P. Trosclair
pete@wilsontrosclair.com
Wilson Trosclair & Lovins, P.L.L.C.
302 N. Market St., Suite 510
Dallas, Texas 75202
Telephone: (214) 484-1930