1  SCOTT A. KAMBER (*pro hac vice*)
2  skamber@kamberlaw.com
   DAVID A. STAMPLEY (*pro hac vice*)
3  dstampley@kamberlaw.com
4  KAMBERLAW, LLC
   100 Wall Street, 23rd Floor
5  New York, New York 10005
6  Telephone:   (212) 920-3072
   Facsimile:   (212) 920-3081
7
8  Class Counsel
9
   Additional counsel listed on signature page
10
                    **UNITED STATES DISTRICT COURT**
11                  **CENTRAL DISTRICT OF CALIFORNIA**
12
13  In Re QUANTCAST ADVERTISING          No. 2:10-cv-05484-GW-JCG
    COOKIE LITIGATION, and
14                                       No. 2:10-cv-05948-GW-JCG
15  In Re CLEARSPRING FLASH              [Assigned to the Hon. George H. Wu]
    COOKIE LITIGATION
16                                       **PLAINTIFFS' NOTICE OF**
17                                       **MOTION AND MOTION FOR**
                                         **(1) FINAL APPROVAL OF CLASS**
18                                       **ACTION SETTLEMENT; AND**
                                         **(2) APPROVAL OF ATTORNEYS**
19                                       **FEES AND COSTS AND**
                                         **INCENTIVE AWARDS**
20
21                                       Date:      June 13, 2011
                                         Location:  Courtroom 10
22                                                   312 N. Spring Street
23                                                   Los Angeles, CA 90012
                                         Time:      9:30 a.m.
24
25
26
27
28

Motion for Settlement              i            No. 2:10-cv-05484-GW-JCG
Final Approval                                  No. 2:10-cv-05948-GW-JCG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant final approval of a proposed settlement in these consumer class action on June 13, 2011 at 9:30 a.m., or at such other time as may be set by the Court.

Plaintiffs seek final approval of these class action settlements as fair, reasonable and adequate, an award of attorneys' fees and reimbursement of attorneys expenses, and awards of incentive fees to the Representative Plaintiffs.

Pursuant to this Court's order of March 3, 2011, Plaintiffs will file a separate brief on May 31, 2011 in response to any valid and timely objections to the settlement.

The Motion is based on this Notice of Motion; the accompanying Brief in Support of the Motion, the authorities cited therein, and the exhibits attached thereto; oral argument of counsel; and any other matters that may be submitted at the hearing.

Dated: April 19, 2011                    KAMBERLAW, LLC

                                         s/David A. Stampley
                                         _____
                                         Scott A. Kamber (*pro hac vice*)
                                         skamber@kamberlaw.com
                                         David A. Stampley (*pro hac vice*)
                                         dstampley@kamberlaw.com
                                         KamberLaw, LLC
                                         100 Wall Street, 23rd Floor
                                         New York, New York 10005
                                         Telephone:  (212) 920-3072
                                         Facsimile:   (212) 920-3081

                                         Class Counsel

Motion for Settlement              ii        No. 2:10-cv-05484-GW-JCG
Final Approval                               No. 2:10-cv-05948-GW-JCG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I. NATURE OF THE LITIGATION ................................................................. 2

II. SETTLEMENT TERMS ........................................................................... 3

    A.  Class Definition ............................................................................ 3

    B.  Settlement Benefits ....................................................................... 3

    C.  Release ........................................................................................... 7

III. CLASS NOTICE COMPORTS WITH DUE PROCESS AND RULE 23 ........ 8

IV. THE SETTLEMENT WARRANTS FINAL APPROVAL ............................ 9

    A.  Strength of Plaintiffs' Case ........................................................ 10

    B.  Risk, Expense, and Complexity of Continued Litigation ..................... 10

    C.  Risks of Maintaining Class Action Status ................................. 11

    D.  Amount Offered in Settlement .................................................. 12

    E.  Extent of Discovery Completed and Stage of Proceeding .................... 13

    F.  Experience and Views of Counsel ............................................. 13

    G.  Presence of Governmental Participant ...................................... 14

    H.  Reaction of the Class .................................................................. 14

V. PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES .............................. 14

    A.  Lodestar Method Calculation Shows Reasonableness of Plaintiffs'

       Request ........................................................................................ 15

    B.  The Percentage of the Fund Method Confirms that the Attorneys' Fee

       Request is Reasonable ................................................................. 19

VI. THE COURT SHOULD APPROVE THE AGREED-UPON  INCENTIVE

    AWARDS TO THE CLASS REPRESENTATIVES ..................................... 20

VII. CONCLUSION ...................................................................................... 21

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Blum v. Stenson*,
   465 U.S. 886 (1984) ...................................................................................20

*Dunleavy v. Nadler*,
   213 F.3d 454 (9th Cir. 2000) ....................................................................20

*Fernandez v. Victoria Secret Stores, LLC*,
   No. CV 06-04149 MMM, 2008 WL 8150856 (C.D. Cal.) ...................9, 12, 13

*Francisco v. Numismatic Guaranty Corp. of Am.*,
   2008 WL 649124 (S.D. Fla) ......................................................................12

*Friend v. Kolodzieczak*,
   72 F.3d 1386 (9th Cir. 1995) ....................................................................15

*Graham v. DaimlerChrysler Corp.*,
   34 Cal.4th 553 (2004) ...............................................................................17

*Hanson v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .....................................................................9

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ..................................................................................15

*In re DJ Orthopedics Inc. Sec. Litig.*,
   No. 01-cv-2238-K (RBB), 2004 U.S. Dist. LEXIS 11457 (S.D. Cal.
   June 21, 2003) ..........................................................................................19

*In re Immunex Sec. Litig.*,
   864 F. Supp. 142 ......................................................................................19

*In re Informix Corp. Sec. Litig.*,
   No. 97-1289 (N.D.Cal., Nov. 23, 1999) (Breyer, J.) ................................19

*In re M.D.C. Holdings Sec. Litig.*,
   [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,474 (S.D. Cal.
   1990) .........................................................................................................20

*In re Melridge, Inc. Sec. Litig.*,
   No. 87-1426 (D. Ore. Mar 19, 1992, Nov. 1, 1993, and April 15, 1996)
   (Frye, J.) ....................................................................................................19

*In re Nat'l Health Labs. Sec. Litig.*,
   Nos. 92-1949 & 93-1694 (S.D. Cal., Aug. 15, 1995)........................................19

*In re OmniVision Tech., Inc.*,
   559 F. Supp.2d 1036 (N.D. Cal. 2008).....................................................9, 10, 12

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ..........................................................................13

*Ketchum v. Moses*,
   24 Cal.4th 1122 (2001) .................................................................................18

*Lealao v. Beneficial Cal., Inc.*,
   82 Cal.App.4th 19 (2000).....................................................................15, 17, 18

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) .........................................................................10

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .......................................................................................8

*Protective Comm. For Indep. Stockholders v. Anderson*,
   390 U.S. 414 (1968) .....................................................................................10

*Razilov v. Nationwide Mut. Ins. Co., et al.*,
   2006 WL 3312024 (D. Or. 2006) (Brown, J.)....................................................19

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   2006 WL 3681138 (E.D.N.Y.) .......................................................................12

*San Bernardino Valley Audubon Soc'y v. San Bernardino*,
   155 Cal. App.3d 738 (1984) ..........................................................................18

*Saulic v. Symantec Corp.*,
   596 F.Supp.2d 1323 (C.D. Cal. 2009) ...............................................................8

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ...........................................................................8

*State of New York v. Keds Corp.*,
   1994 WL 97201 (S.D.N.Y.) ............................................................................12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .............................................................15, 17, 19

*Wershba v. Apple Computer, Inc.*,
   91 Cal.App.4th 224 (2001) ............................................................................17

*Wing v. Asarco Inc.*,
   114 F.3d 986 (9th Cir. 1997) ..........................................................................15

**OTHER AUTHORITIES**

Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* (4th Ed.
   2009).................................................................................................9, 12

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................8

Fed. R. Civ. P. 23(e) ...........................................................................................8, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

In these putative class action lawsuits, Plaintiffs sought relief based on their allegations that Defendants bypassed their browser privacy controls in order to track class members' Internet activities through the use of Adobe Flash local shared objects ("LSOs," sometimes referred to as "Flash cookies"). Plaintiffs contend that these LSOs were used to track their web activity without their knowledge or consent, that they did not receive adequate notice or choice about the use of LSOs, and that these actions violated Plaintiffs' privacy rights in violation of federal, state and common laws.

Following months of negotiations, including a contentious mediation before Rodney Max, the parties were able to come to a resolution resulting in a settlement agreement (the "Settlement Agreement", *Quantcast* action, Dkt. 42-2; *Clearspring* action, Dkt. 26-2). On March 3, 2011, this Court found that the Settlement Agreement was worthy of preliminary approval (*Quantcast* action, Dkt. 72; *Clearspring* action, Dkt. 49), and now Plaintiffs come before this Court for final approval of the Settlement as fair, reasonable and adequate.

As required by the notice plan approved by this Court, notice of the settlement was given by publication in print and online, and by distribution of a press release.

Given the strength of the settlement – the termination of the offending conduct as well as a settlement benefit of $2.4 million - it is not surprising that there is currently no opposition to the proposed settlement. To date, there have been no objections and no opt-outs. However, the time to object or opt out of the settlement has not yet run, and the parties will address any objections that may be received in papers to be filed May 31, 2011 as directed by this Court.

The complexity and novelty of Plaintiffs' claims, coupled with the vigorous defense promised by Defendants, further supports the conclusion that this

1    Court should find the results achieved in this settlement to be fair, reasonable and
2    adequate, and that the Settlement warrants final approval.

3                       **I. NATURE OF THE LITIGATION**

4            In July, 2010, after substantial research and investigation, Plaintiffs filed a
5    number of complaints which were consolidated by this Court as *In re Quantcast*
6    *Advertising Cookie Litig.*, No. 2:10-cv-5484-GW-JCG and *In re Clearspring*
7    *Flash Cookie Litig.*, No. 2:10-cv-05948-GW-JCG alleging claims for damages,
8    injunctive relief, and declaratory relief arising out of Defendants use of LSOs to
9    circumvent users' blocking or deleting Quantcast and Clearspring browser cook-
10   ies. Following initial discussions between counsel for the parties in October
11   2010, the parties agreed to enter into private mediation. (Stampley Decl ¶ 6).

12           On October 19, 2010 the parties met in person for mediation with the
13   assistance of Rodney Max. The mediation resulted in a tentative accord on an
14   agreement in principal for the resolution of all claims against Defendants, subject
15   to additional negotiations. The product at the end of the mediation session was a
16   memorialized agreement on all substantive relief. (Stampley Decl. ¶ 7). Follow-
17   ing agreement on all substantive issues, the parties began negotiations on incen-
18   tive fees for named class representatives and payment to Plaintiffs' counsel.
19   (Stampley Decl. ¶ 7). The parties now seek final approval of the Settlement
20   reached after extensive negotiations.

21           The Settlement provides strong injunctive relief in its prescription for the
22   termination of the use of LSOs to "respawn" deleted cookies or the use of Adobe
23   Flash capabilities in certain undisclosed ways that may tend to circumvent users'
24   browser controls. The Settlement also provides for $2.4 million in *cy pres* pay-
25   ments to non-profit organizations to fund research and education programs and
26   activities to promote consumer awareness and choice regarding the privacy,
27   safety, and security of electronic information from and about consumers. The

28

Motion for Settlement              2          No. 2:10-cv-05484-GW-JCG
Final Approval                                 No. 2:10-cv-05948-GW-JCG

1  settlement fund will also be applied to settlement-related costs – including set-

2  tlement administration, incentive awards, and attorneys' fees and expenses.

3      A full explanation of the technology at issue was submitted to Court by a

4  requested joint submission prior to preliminary approval and may be found at

5  Quantcast action Dkt. 59 and Clearspring action Dkt. 37.

6  ## II. SETTLEMENT TERMS

7      The key terms of the Settlement Agreement (*Quantcast* action, Dkt. 42-2;

8  *Clearspring* action, Dkt. 26-2) are as follows:

9  **A.   Class Definition**

10      On March 3, 2011, this Court certified the following Class for the pur-

11  poses of Settlement (*Quantcast* action, Dkt. 72; *Clearspring* action, Dkt. 49):

12      All persons in the United States who, during the Class Period, used any

13  web browsing program on any device to access one or more web sites or online

14  content controlled, operated or sponsored by Defendants; Undertaking Parties

15  News Corporation, Viacom, Inc., The Walt Disney Company, or Warner Music

16  Inc. or subsidiaries or affiliates thereof; or any other internet site employing any

17  of Clearspring's or Quantcast's technologies involving the use of HTTP "cook-

18  ies" ("Cookies" or local shared objects stored in Adobe Flash Media local stor-

19  age ("LSOs").

20  **B.   Settlement Benefits**

21      Defendants Quantcast and Clearspring have agreed to provide the follow-

22  ing relief:

23      ***1.   General Relief***

24      Defendants Quantcast and Clearspring will establish a cash settlement

25  fund of two million, four hundred thousand dollars ($2,400,000), the net value of

26  which will be distributed to the previously identified non-profit organizations

27  and educational institutions to fund research and education projects and activities

28  to promote consumer awareness and choice regarding the privacy, safety, and

security of electronic information from and about consumers, and which projects and activities shall exclude the sponsorship or funding of litigation or lobbying efforts regarding specific legislation. Individual class members will not receive direct compensation.[1] Out of the $2.4 million fund, all attorneys' fees, costs, any enhanced awards to the named Plaintiffs, settlement administration costs, and notice and administration costs will be paid as provided for under the Settlement Agreement.

### 2. *Additional Relief*

In addition to the payments described above, the Defendants provided the following relief after Preliminary Approval was granted by the Court. This relief is meaningful to the class and immediately terminates the complained of conduct:

a. Quantcast and Clearspring will not employ LSOs to: (i) "respawn" HTTP cookies; and/or (ii) serve as an alternative method to HTTP cookies for storing information about a user's web browsing history, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content, without adequate disclosure; and/or (iii) otherwise counteract any computer user's decision to either prevent the use of or to delete previously created HTTP cookies. (Settlement Agreement, sec. 4.19).

b. The Undertaking Parties have sent a request to at least one of the industry groups charged with receiving comments to the Self-Regulatory Principles that those Self-Regulatory Principles should be amended to include express prohibitions on the use of LSOs or any similar technology to regenerate, without disclosure, HTTP

---

[1] *See* Settlement Agreement (Dkt. 45-2 )and Hearing Order granting preliminary approval, (Dkt. 49).

cookies that a user affirmatively deleted.  Additionally, the Undertaking Parties shall request that the Self-Regulatory Principles be amended to include guidance to member firms that LSOs should not be used without disclosure as an alternative method to HTTP cookies for storing information about a user's web browsing history across unaffiliated domains, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content. If an Undertaking Party is a member of the Network Advertising Initiative ("NAI"), the Undertaking Party shall also inform the Network Advertising Initiative of its preference that the NAI Principles be similarly amended. (Settlement Agreement, sec. 4.20.1)

c.    The Undertaking Parties agree that they shall not, in any official capacity in any public or industry forum, take a position contrary to those stated above. (Settlement Agreement, sec. 4.20.2).

d.    Each Undertaking Party shall, (i) in its online Privacy Policy or an opt-out page clearly linked thereto: maintain a link to the NAI "Opt Out of Behavioral Advertising" tool presently located at http://www.networkadvertising.org/manag-ing/opt_out.asp or, once it is fully implemented for consumers, to the industry-developed website page currently represented by http://www.about¬ads.info/consumers/; or, on the Undertaking Party's own internet home page, maintain a link to a page with substantially the same information and consumer options; or (ii) once it is fully implemented for consumers, display the "Advertising Option Icon" discussed in the Self-Regulatory Principles, which links to an OBA disclosure statement and opt-out mechanism. A link to the Undertaking Party's online Privacy Policy or the Advertising

Option Icon shall be displayed on the home page of each Undertaking Party's U.S. consumer-oriented website(s) and on at least a significant number of those consumer-oriented web pages of the Undertaking Party's U.S. consumer-oriented website(s) on which consumer data is collected or used for advertising. (Settlement Agreement, sec. 4.20.3.)

e.    If, after the Settlement becomes final, and Undertaking Party or its agents deposit LSOs on the computers of users who visit one or more of its U.S. consumer-oriented websites or interact with its widgets or other applications on such websites, the Undertaking Party shall include, in its online Privacy Policy, a disclosure of its use of LSOs and a link to at least one website or utility offering users the ability to manage LSOs, if such website or utility is available. By linking to such a third-party website or utility in order to comply with this Agreement, the Undertaking Party will not assume responsibility for the functionality or any other aspect of such website or utility. If one or more of the Undertaking Party's websites, widgets, or application components may not maintain its or their full user functionality unless the user's settings permit full acceptance of LSOs, the Undertaking Party shall so disclose in its Privacy Policy. (Settlement Agreement, sec. 4.20.4).

f.    An Undertaking Party's Privacy Policy, links to which shall appear as specified above, shall include an email address or other online reporting mechanism to which members of the public can send any privacy-related concerns respecting the operation of the Undertaking Party's websites. The Undertaking Party will regularly review messages sent to this address or mechanism, but need not individually review duplicate or cumulative messages appearing to have

1  emanated from or at the behest of the same source. (Settlement

2  Agreement, sec. 4.20.5).

3  g.  These provisions shall remain in effect until June 30, 2013 (Settle-

4  ment Agreement, sec. 4.20.6).

5  **3.  *Payment of Notice and Administrative Fees***

6  The full cost of notice and administration and effectuation of the Settle-

7  ment Agreement shall be paid out of the settlement fund.

8  **4.  *Compensation of Class Representatives***

9  In addition to any benefits afforded under the Settlement, and in recogni-

10  tion of their efforts on behalf of the Class, subject to Court approval, representa-

11  tive Plaintiffs shall each receive $1,500 as appropriate compensation for their

12  time and effort serving as class representatives in the litigation against Defen-

13  dants.

14  **5.  *Attorneys' Fees and Expenses***

15  Defendants have agreed that a payment out of the Settlement Fund to

16  Plaintiffs' counsel, subject to Court approval, of up to twenty-five percent of the

17  settlement fund in attorneys' fees and for the reimbursement of Plaintiffs' coun-

18  sel's costs is fair and reasonable, and Defendants will not object or otherwise

19  challenge Plaintiffs' counsel's application for payment of fees from the Settle-

20  ment Fund if limited to such an amount. Plaintiffs' counsel has, in turn, agreed

21  not to seek more than said amount from the Court. The detailed application of

22  Plaintiffs' counsel is contained herein.

23  **C.  Release**

24  Upon entry of a final order approving the Settlement and following the

25  expiration of the time for appeal or the entry of a decision on such appeal, class

26  representatives and each and every member of the Class who have not timely

27  filed a request to be excluded from the settlement class will release and forever

28  discharge Quantcast, Clearspring, any of their customers which deployed the

technology at issue in this case, as well as the Undertaking Parties and their subsidiaries and affiliates, for their deployment of Quantcast and Clearspring technologies in any of their online content, as well as their deployment of similar technologies not provided by Quantcast or Clearspring in any of their online content, as further explained for in the attached Settlement Agreement.

Access to the full text of the release is available to all Class Members in the Settlement Agreement posted on the Settlement website (www.flashcookiesettlement.com).

**III. CLASS NOTICE COMPORTS WITH DUE PROCESS AND RULE 23**

Before final approval of a class action can issue, notice of the settlement must be provided to the Class. Fed. R. Civ. P. 23(e)(1). Rule 23 requires the class receive "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Actual notice, however, is not required. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice to the class must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Saulic v. Symantec Corp.*, 596 F.Supp.2d 1323, 1327 (C.D. Cal. 2009)

As approved by this Court in its preliminary approval Hearing Order (*Quantcast* action, Dkt. 72; *Clearspring* action, Dkt. 49), Notice was placed in Parade A, Newsweek, Information Week and Computer World magazines. Notice was further published through Internet advertisements using banner and text ads on websites with the largest number of unique viewers per month according to Google Adwords network. A press release was also distributed on PR Newswire's National Circuit. The Notice was also published on the Settlement website, www.flashcookiesettlement.com.

## IV. THE SETTLEMENT WARRANTS FINAL APPROVAL

Pursuant to the Federal Rules of Civil Procedure 23(e), "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues or defenses of a certified class" and such approval may occur "only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." Fed. R. Civ. P. 23; *In re OmniVision Tech., Inc.*, 559 F. Supp.2d 1036, 1040 (N.D. Cal. 2008) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). There is a strong policy towards approval of settlements, especially where complex litigation is involved. *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal.) (citing *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008)). There are a number of factors for the court to consider when determining whether to grant final approval of a class action settlement. In the Ninth Circuit, courts presume fairness if the negotiations were at arm's length, there was sufficient discovery, the counsel are experienced in similar litigation, and there are only a small number of objectors. Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th Ed. 2009); *Hanson v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As provided above, the Settlement Agreement, to which there are no objections as of yet, is the product of substantial effort by experienced counsel, substantial research and investigation, and after extensive, arm's length negotiations, including a mediation session with Rodney Max. (Stampley Decl. ¶7). Accordingly, the Court's analysis of the factors listed below should be examined with a presumption that the Settlement Agreement is fair.

It is well settled that in analyzing the fairness, reasonableness and adequacy of a class action settlement, the Court may consider the following non-exhaustive list of factors:

(1) [T]he strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). In the instant case, the factors militate in favor of approving the settlement.

**A.      Strength of Plaintiffs' Case**

"Basic to [analyzing a proposed settlement] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation." *Protective Comm. For Indep. Stockholders v. Anderson*, 390 U.S. 414, 424-425 (1968). While Plaintiffs believe in the strength of their claims, it fails to outweigh the significant benefits and mitigation of risk provided for in the Settlement. Plaintiffs brought a number of novel claims and theories in an untested area of law. Defendants have asserted, and express confidence in, a variety of defenses. Defendants have stated that, in absence of the settlement, they would mount an aggressive defense. Plaintiffs' counsel recognizes that the Settlement Agreement resolves material litigation uncertainties. (Stampley Decl. ¶¶ 10,11). Plaintiffs' case is not so strong that the Settlement Agreement is unreasonable. Accordingly, this factor favors approval of the Settlement.

**B.      Risk, Expense, and Complexity of Continued Litigation**

The next factor for the Court's analysis is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." *In re OmniVision*, 559 F. Supp.2d at 1041 (citing *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)). Here, in the absence of the Settlement, and assuming Plaintiffs prevailed in obtaining certification of the class, Plaintiffs would face a number of certain risk-laden obstacles in litigating this matter.

The complex factual and legal issues in this case involve an evolving technology and unique issues of law. It is certain that the expense, duration and complexity that would result from the claims and defenses would be substantial. It would be necessary to undertake full document and deposition discovery, expert discovery and dispositive motion practice at the conclusion of discovery. Significant costs would be incurred were these cases to proceed to trial, including expenses for expert witnesses, technical consultants and the myriad of other costs necessitated by the trial of a class action. (Stampley Decl. ¶ 12 ). Given the complexities of the issues, the defeated party would likely appeal.

These predictable obstacles to timely resolution must be considered in light of risks with less certain consequences, but potentially, far more costly outcomes. For example, Plaintiffs face risks of dismissal at the pleading stage and in proving liability and damages at trial. Further, critical to the analysis here, it is impossible to predict how a trier of fact would construe the evidence and testimony. Here, the expense, complexity and likely duration of the litigation fully supports the Settlement, and the substantial and immediate relief provided to the Class under the Settlement Agreement weigh heavily in favor of its approval.

**C.      Risks of Maintaining Class Action Status**

The Court's March 3, 2011 Order conditionally certified a nationwide class for settlement purposes only. (*Quantcast* action, Dkt. 72; *Clearspring* action, Dkt. 49). However, if the Court fails to grant final approval to the Settlement for any reason, the conditional certification of the class will automatically become void. Although Plaintiffs and Plaintiffs' counsel believe they would be successful in obtaining certification of an adversarial class absent the Settlement Agreement, Defendants have made it clear that, in the absence of an agreement, they would vigorously oppose certification. Further, even if Plaintiffs were successful on a motion for class certification, absent the Settlement Agreement,

1  Defendants could move to decertify the class before or during trial and likely

2  would challenge certification on appeal.

3  **D.    Amount Offered in Settlement**

4       The next factor for the Court's consideration is the reasonableness of the

5  amount offered by Defendants. In addition to the substantial injunctive relief

6  obtained by the Settlement – termination of the offending conduct – the settle-

7  ment also provides for a settlement fund of $2.4 million which will be distributed

8  to one or more non-profit organizations to fund research and education projects

9  and activities to promote consumer awareness and choice regarding the privacy,

10  safety, and security of electronic information from and about consumers.

11       "When a litigated or settled aggregate class recovery cannot feasibly be

12  distributed to individual class members . . . the court may direct that such funds

13  be applied prospectively to the indirect benefit of the class." *Newberg on Class*

14  *Actions* § 10:17. In cases such as this, where any potential recovery per Class

15  member would be small and where injunctive relief represents a large part of the

16  potential recovery, a *cy pres* resolution, such as the one proposed here, is reason-

17  able and adequate. *State of New York v. Keds Corp.*, 1994 WL 97201 at *3

18  (S.D.N.Y.); *Francisco v. Numismatic Guaranty Corp. of Am.*, 2008 WL 649124

19  (S.D. Fla). Courts have also found settlements of statutory actions fair and rea-

20  sonable when the class representatives received statutory damages, and the

21  remainder of the settlement was distributed as a *cy pres* payment. *Reade-Alvarez*

22  *v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138 (E.D.N.Y.).

23       Moreover, the certainty and relative immediacy of the benefit under the

24  Settlement Agreement, when compared with the risks associated with seeking

25  further benefits but receiving nothing, further justifies the reasonableness of

26  accepting less than the maximum potential recovery. *See OmniVision*, 559 F.

27  Supp.2d at 1042; *Fernandez*, 2008 WL 8150856 at *6.

28

**E.    Extent of Discovery Completed and Stage of Proceeding**

"'The extent of discovery may be relevant in determining the adequacy of the parties' knowledge of the case.'" *Fernandez*, 2008 WL 8150856 at *7 (quoting *DIRECTV*, 221 F.R.D. at 527). In this case, counsel, assisted by Plaintiffs, initiated their own factual and technical investigations for months before filing the Complaints. In preparing the case for mediation, counsel conducted research and consulted with experts on issues of industry standards and best practices for managing users' privacy expectations and presenting notice and choice to users in various online environments. In the course of mediation and continuing throughout the negotiation process, representatives of the parties held cooperative discussions and exchanged information regarding Defendants technology and users' experiences. Thus, counsel was more than adequately familiarized with the case to advocate for the interests of the class and effectively negotiate the merits of the Settlement. (Stampley Decl. ¶ 3). Accordingly, this factor favors approval of the Settlement.

**F.    Experience and Views of Counsel**

The next factor for the Court to consider is Plaintiffs' counsel's experience and views about the adequacy of the Settlement. The recommendation of Plaintiffs' counsel should be given the presumption of reasonableness. *Fernandez*, 2008 WL 8150856 at *7 (citing *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Plaintiffs' counsel, as well as other members of KamberLaw, LLC, and counsel from additional plaintiffs firms that were actively involved in the litigation of this matter, have regularly engaged in major complex litigation, and have had extensive experience in prosecuting consumer class action lawsuits of similar

size and complexity. Through their investigation, consultation with experts, mediation and settlement, Plaintiffs' counsel have an intimate understanding of the instant litigation and believe the settlement to more than exceed the "fair, adequate, and reasonable" standard required for the Court's approval. (Stampley Decl. ¶ 3). This fact, therefore, also favors the Court's final approval of the Settlement Agreement.

**G.     Presence of Governmental Participant**

In this matter, Plaintiffs' counsel made themselves available to inquiries from representatives of government agencies, however there was no governmental participation. Therefore this factor does not apply in this matter.

**H.     Reaction of the Class**

The Settlement provides wide-ranging injunctive relief that addresses all of the primary concerns of the Class. The parties agree that the Settlement provides the best possible resolution of Plaintiffs' concerns. As required by this Court, the time for opting out or objecting to this Settlement has not yet run. This factor will be further addressed after the time for objections has elapsed.

### V. PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES

This case does not involve a common fee award in which the attorneys' fees may detract from the relief available to the Class. Rather, this settlement involves broad injunctive relief, and a *cy pres* payment, with a maximum attorneys' fee negotiated and agreed to at mediation to be paid for out of the Settlement Fund. (Stampley Decl. ¶ 11). Furthermore, the amount of attorneys' fees was not discussed or negotiated until the material terms of the Settlement Agreement had been resolved. (Stampley Decl. ¶ 7). As discussed below, the sought attorneys' fees are justified by the expenditure of time and expenses in the litigation against Defendants and are consistent with established legal authorities. In total, Plaintiffs' counsel seeks a total of $600,000 in combined fees and costs which represents 25% of the settlement fund. This total amount is a multiplier of

1   just over one times the lodestar expended in this matter. Such a multiplier is well

2   below the multiplier that has been found to be reasonable by the Courts of the

3   Ninth Circuit and is thus fair compensation for the broad-based injunctive relief

4   obtained.

5   **A.      Lodestar Method Calculation Shows Reasonableness of Plaintiffs'**

6           **Request**

7           It is well established that in a class action governed by California law

8   where "the responsibility to pay attorneys' fees is statutorily or otherwise trans-

9   ferred from the prevailing plaintiff or class to the defendant, the primary method

10  for establishing the amount of reasonable attorneys' fees is the lodestar method.

11  *Lealao v. Beneficial Cal., Inc.*, 82 Cal.App.4th 19, 26 (2000). Furthermore, under

12  Ninth Circuit precedent, where a determination of fees arises out of a settlement

13  agreement, the Court would also determine a reasonable fee using a lodestar with

14  a multiplier analysis. *See Wing v. Asarco Inc.*, 114 F.3d 986, 988 (9th Cir. 1997).

15          ***1.      Plaintiffs' counsel Reasonably Incurred a Lodestar of $544,877***

16          The lodestar figure, or "touchstone" is based on the total number of rea-

17  sonable attorney hours expended multiplied by a reasonable hourly rate for each

18  attorney involved in the litigation. *Lealao*, 82 Cal.App.4th at 26; *Friend v.*

19  *Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir. 1995). Absent extreme circum-

20  stances, counsel is entitled to be compensated for "all hours reasonably ex-

21  pended." *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983). It is proper to calcu-

22  late attorneys' fees at prevailing rates to compensate for delay in receipt of

23  payment. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).

24  Further, the standard lodestar formula is not limited to this initial mathematical

25  calculation and may be enhanced with a multiplier upon consideration of a

26  variety of factors. *Lealao*, 82 Cal.App.4th at 41.

27          As supported by the attached declarations (Malley Decl.; Nachawati Decl.

28  ; Parisi Decl.; Wilson Decl.), Plaintiffs' counsel's base lodestar is represented by

Motion for Settlement                  15              No. 2:10-cv-05484-GW-JCG
Final Approval                                         No. 2:10-cv-05948-GW-JCG

the following summary chart, which is the combined lodestar for both Quantcast and Clearspring:

| Firm | Hours | Lodestar |
|------|-------|----------|
| KamberLaw, LLC | 455.0 | $239,850 |
| Parisi & Havens LLP | 212.5 | $85,827 |
| Law Offices of Joseph H. Malley, P.C. | 360.7 | $165,855 |
| Fears Nachawati Law Firm | 104.0 | $36,400 |
| Wilson Trosclair & Lovins, P.L.L.C. | 39.0 | $16,955 |
| TOTAL | 1171.2 | $544,887 |

The attorneys performing work on this litigation are billed at rates that correlate to their respective experience. Further, the hours submitted were reviewed and any unnecessary hours or duplicative hours have been adjusted. (Stampley Decl. ¶22). Therefore, Plaintiffs' counsel's base, or touchstone, lodestar amount is $544,877.

> **2.** **Plaintiffs' counsel's Requested Fee Multiplier of Just Over One Percent is Reasonable and Consistent with the Multipliers Typically Awarded in Comparable Cases**

The parties have agreed that a fee not exceeding 25 percent, including costs and expenses, is reasonable and warranted in this case. Plaintiffs' counsel seeks a total fee and cost award of $600,000. This represents a multiplier on counsels' time of just over one. (Stampley Decl. ¶ 20). Applying a multiplier of just over 1 is a modest multiplier that is reasonable and warranted here.

The standard lodestar formula is not limited to the initial mathematical calculation and may be enhanced by a multiplier. *Lealao*, 82 Cal.App.4th at 41. Indeed, in *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 579 (2004), the Court held that while the "lodestar is the basic fee for comparable legal services

1    in the community, it may be adjusted by the court" based on various factors

2    including the novelty and difficulty of the questions involved, the skill displayed

3    in presenting them, the contingent nature of the case, and whether an exceptional

4    effort produced an exceptional result. California and other courts around the

5    nation, including the Ninth Circuit, apply lodestar multipliers generally ranging

6    from 2-4, though even higher multipliers have been awarded. *Wershba v. Apple*

7    *Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001) ("Multipliers can range from 2-

8    4 or even higher"); *Vizcaino*, 290 F.3d at 1052-54 (listing, *inter alia*, lodestar

9    multipliers in class actions throughout the country, finding the average multiplier

10   to be 3.32 and approving a multiplier of 3.65). The review of the relevant factors

11   below demonstrates that Plaintiffs are entitled to the requested multiplier.

12           **(a) The Novelty and Difficulty of the Questions Presented**

13           This action was complex on all fronts. The case had a number of legal pit-

14   falls, including the issue of actual harm and the issue of liability. (Stampley Decl.

15   ¶ 11.) Further, the technical aspects of the case required a substantial commit-

16   ment of time, expense and skill from counsel in order to fully pursue the Class

17   claims. (Stampley Decl. ¶ 3.)

18           **(b) The Contingent Nature of the Action**

19           Lodestar fee enhancement for contingent risk accounts for the possibility

20   that the attorney will not receive payment if the suit does not succeed, and there-

21   fore constitutes earned compensation, that is "intended to approximate market-

22   level compensation for such services, which typically includes a premium for the

23   risk of nonpayment or delay in payment of attorneys' fees." *Ketchum v. Moses,*

24   24 Cal.4th 1122, 1138 (2001). Further, contingency risk is used as a basis for a

25   multiplier to "entice competent counsel to undertake difficult public interest

26   cases." *San Bernardino Valley Audubon Soc'y v. San Bernardino*, 155 Cal.

27   App.3d 738, 755 (1984).

28

Plaintiffs' counsel undertook this litigation on a wholly contingent basis. There was no guarantee of success and taking on the litigation required counsel to commit to advancing substantial out of pocket expenses. Moreover, the size of the case and the overly contentious nature of litigation added further risk to Plaintiffs' counsel in that they were necessarily precluded from initiating other cases.

### (c) The Result Obtained on Behalf of the Class

As discussed above, the total value of the settlement to the class is a substantial sum - $2.4 million. (Dkt. 45-2).[2] In addition the class also received substantial injunctive relief in the form of the termination of the offending conduct.

As Plaintiffs' claims are untested, and the actual harm to class members was at issue, counsel agreed to commence this litigation knowing they would face significant opposition. Indeed, Defense counsel made it clear that absent a settlement, this matter would have continued to be aggressively defended. Analysis of novel issues, significant investigation - including consultation with experts at an early stage, and careful and extended negotiation of the final settlement agreement were required to ensure maximum benefit to the Class, and that is in fact what the Class received. Accordingly, counsels' base lodestar of $544,887 warrants a modest multiplier of just over one percent, which lies well within and on the low side of the commonly awarded range and results in an award of attorneys' fees of $600,000.

---

[2] The value of the settlement to the class is properly based upon the total value of relief to the class plus the agreed upon attorneys' fees and costs as they represent a "package deal." *See Lealao*, 82 Cal.App.4th at 33 (quoting *Johnston v. Coerica Mort. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).

**B.      The Percentage of the Fund Method Confirms that the Attorneys' Fee Request is Reasonable**

Though it should not be the only calculation made in evaluating the credibility of a fee request, an analysis of the request by the "percentage of the fund" method is helpful in confirming that the requested lodestar award is reasonable. Here, such an analysis confirms that it is.

Plaintiffs' requested fee and cost award is $600,000 which is an amount equal to 25% of the total settlement value. A relevant factor when awarding fees is whether the amount is within the range typically associated with cases of its kind. *Vizcaino*, 290 F.3d at 1048-50. Here, a 25% fee is not excessive but rather below the median rate for attorneys' fee awards in class actions which range from 27 to 30 percent. *In re DJ Orthopedics Inc. Sec. Litig.*, No. 01-cv-2238-K (RBB), 2004 U.S. Dist. LEXIS 11457 at *21 (S.D. Cal. June 21, 2003), citing Thomas E. Willging, Laurel L. Hopper, and Robert J. Niemic, "Empirical Study of Class Actions in Four Federal District Courts: Final Report to Advisory Committee on Civil Rules," at 69 (Federal Judicial Center 1996). Moreover such a fee award is in line with percentages awarded in other Ninth Circuit class action cases. *See In re Informix Corp. Sec. Litig.*, No. 97-1289 (N.D.Cal., Nov. 23, 1999) (Breyer, J.) (30 percent: $40 million fee, $137 million fund); *Razilov v. Nationwide Mut. Ins. Co., et al.*, 2006 WL 3312024 (D. Or. 2006) (Brown, J.) (30 percent: $5.77 million fee, $19.25 million fund); *In re Nat'l Health Labs. Sec. Litig.*, Nos. 92-1949 & 93-1694 (S.D. Cal., Aug. 15, 1995) (Brooks, M.J.) (30 percent: $19 million fee, $64 million fund); *In re Immunex Sec. Litig.*, 864 F. Supp. 142 (W.D. Wash. 1994( (Dwyer, J.) (30 percent: $3.9 million fee, $14 million fund); *In re Melridge, Inc. Sec. Litig.*, No. 87-1426 (D. Ore. Mar 19, 1992, Nov. 1, 1993, and April 15, 1996) (Frye, J.)(37.1 percent: $20 million fee, $54 million fund); and *Hernandez vl Kovacevich*, 2005 WL 2435906 (E.D. Cal. 2005) (Wagner, J.) (33.3 percent: $795,000 fee, $2.5 million fund).

1        Plaintiffs' requested attorneys' fee and cost award is also reasonable when

2    compared to customary private contingent fee agreements, which usually range

3    between 30% and 40% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 904

4    (1984) ("In tort suits, an attorney might receive one-third of whatever amount the

5    plaintiff recovers. In those cases, therefore, the fee is directly proportional to the

6    recovery."); *In re M.D.C. Holdings Sec. Litig.*, [1990 Transfer Binder] Fed. Sec.

7    L. Rep. (CCH) ¶ 95,474, at 97,490 (S.D. Cal. 1990)("In private contingent litiga-

8    tion, fee contracts have traditionally ranged between 30% to 40% of the total

9    recovery."). Indeed, each of the plaintiff counsel typically charges at least

10   33.33% for individual contingency fee cases. (Stampley Decl. ¶ 32). Thus, cus-

11   tomary contingent fee agreements obtained in the private marketplace, which

12   range between 30 percent to 40 percent of the money recovered, also validate the

13   percentage fee requested in this case.

14       **VI. THE COURT SHOULD APPROVE THE AGREED-UPON**

15       **INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES**

16       The incentive fees for the named class representatives are reasonable and

17   should be approved. Incentive fees for class representatives are favored and

18   encouraged. California courts have recognized the appropriateness of incentive

19   awards in similar actions. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

20   463 (9th Cir. 2000) (approving $5,000 incentive awards to two class representa-

21   tives in a settlement of $1,725,000).

22       These awards are entirely reasonable and well within the range of similar

23   awards. The involvement of the Class Representatives in this action was critical

24   to the ultimate success of the case (Stampley Decl. ¶ 24). The Class Representa-

25   tives were actively involved in the prosecution of this matter, such as by bringing

26   the alleged violation to the attention of Plaintiffs' counsel; working with Plain-

27   tiffs' counsel in the investigation of their claims; and participating in the negotia-

28   tion of the Settlement Agreement (Stampley Decl. ¶ 24). But for the Class Repre-

1 sentatives bringing the alleged violations to the attention of plaintiff counsel and

2 their participation and willingness to undertake the responsibilities and risks

3 attendant with bringing a representative action, the substantial benefit to the class

4 discussed above would not have resulted. Plaintiffs, therefore, request that this

5 Court approve the agreed-upon incentive awards totaling $30,000 for the class

6 representatives.

7                                    **VII. CONCLUSION**

8        For the foregoing reasons, Plaintiffs respectfully ask that the Court grant

9 final approval to the Settlement Agreement and approve the agreed upon attor-

10 neys' fees and expenses and grant such further relief the Court deems just and

11 proper.

12 DATED: April 19. 2011                        KAMBERLAW, LLC

13                                              s/David A. Stampley

14                                              Scott A. Kamber (*pro hac vice*)
                                                skamber@kamberlaw.com
15                                              David A. Stampley (*pro hac vice*)
                                                dstampley@kamberlaw.com
16
                                                KamberLaw, LLC
17                                              100 Wall Street, 23rd Floor
                                                New York, New York 10005
18                                              Telephone:  (212) 920-3072
                                                Facsimile:   (212) 920-3081
19

20

21                                              CLASS COUNSEL

22

23 Avi Kreitenberg (SBN 266571)
    akreitenberg@kamberlaw.com
24 KamberLaw, LLP
25 1180 South Beverly Drive, Suite 601
26 Los Angeles, California 90035
    Telephone:  (310) 400-1050
27 Facsimile:   (310) 400-1056

28

Motion for Settlement              21            No. 2:10-cv-05484-GW-JCG
Final Approval                                   No. 2:10-cv-05948-GW-JCG

1   Joseph H. Malley
2   malleylaw@gmail.com
    Law Office of Joseph H. Malley
3   1045 North Zang Blvd Dallas, TX 75208
4   Telephone: (214) 943-6100

5   David Parisi (SBN 162248)
6   dcparisi@parisihavens.com
    Suzanne Havens Beckman (SBN 188814)
7   shavens@parisihavens.com
8   Parisi & Havens LLP
    15233 Valleyheart Drive
9   Sherman Oaks, California 91403
10  Telephone:  (818) 990-1299

11  Jeremy Wilson
12  Jeremy@wilsontrosclair.com
13  Kenneth P. Trosclair
    pete@wilsontrosclair.com
14  Wilson Trosclair & Lovins, P.L.L.C.
15  302 N. Market St., Suite 510
    Dallas, Texas 75202
16  Telephone: (214) 484-1930

17  Majed Nachawati
18  mn@fnlawfirm.com
19  Fears Nachawati Law Firm
    4925 Greenville Ave, Suite 715
20  Dallas, Texas 75206
21  Telephone: (214) 890-0711

22

23

24

25

26

27

28

Motion for Settlement            22        No. 2:10-cv-05484-GW-JCG
Final Approval                               No. 2:10-cv-05948-GW-JCG